IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DC GAMBLING RECOVERY, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN WAGERING, INC. et al.,<br><br>*Defendants*. | Case No. 1:25-cv-01023-CJN |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON THE RETROACTIVITY OF
THE FISCAL YEAR 2026 BUDGET SUPPORT ACT OF 2025**

The Fiscal Year 2026 Budget Support Act of 2025 ("BSA") does not apply retroactively to Plaintiff's claims. Two independent reasons compel that conclusion. First, when a law purports to be retroactive, District law requires an express statement to apply that law to pending claims and the BSA lacks such a statement. Second, and more fundamentally, the BSA contravenes the Professional and Amateur Sports Protection Act of 1992, 28 U.S.C. § 3701 ("PASPA"). That federal statute was enforceable as to the District on May 3, 2019, the supposed retroactive date of the BSA. It remained enforceable in September 2025, when the BSA was passed. And it remains enforceable today.

**I.      The Budget Support Act Does Not Expressly Apply to Plaintiff's Claims**

Statutes apply prospectively unless the legislature clearly says otherwise. *See Recio v. District of Columbia Alcoholic Bev. Control Bd.*, 75 A.3d 134, 140 (D.C. 2013); *Alpizar v. United States*, 595 A.2d 991, 993-94 (D.C. 1991). And for good reason. Retroactive legislation targeting pending litigation raises both separation-of-powers and due-process concerns. *See Bank Markazi v. Peterson*, 578 U.S. 212, 227-28 (2016). So, District of Columbia courts demand unmistakable clarity before applying a new statute to ongoing litigation when it affects a party's substantive entitlement to relief. *See Gersman v. Grp. Health Ass'n*, 975 F.2d 886, 900 (D.C. Cir. 1992) (If a "case concerns a substantive amendment and pre-amendment conduct . . . [t]he rights of the parties must be adjudicated as they were under the law prevailing at the time of the conduct."); *see also LaFontant v. I.N.S.*, 135 F.3d 158, 163 (D.C. Cir. 1998) (defining a substantive amendment as affecting "the underlying primary conduct of the parties").

The District's general savings statute reinforces the point. When the D.C. Council amends or repeals a law, any liability already incurred under that law survives, "unless the repealing act expressly . . . release[s] or extinguish[es]" that liability. D.C. Code § 45-404. This rule is "part of every statute that amends or repeals another statute" imposing liability. *Holiday*

1

*v. United States*, 683 A.2d 61, 79 (D.C. 1996).  So, "unless the repealer 'expressly provides' for the repealer itself to apply to pending cases . . . the old law, *i.e.*, the newly repealed law, shall still apply."  *Id.* at 64; *see also In re Metro Subway Accident Referral*, 630 F. Supp. 385, 390 (D.D.C. 1984) ("savings statutes . . . provide that rights and liabilities existing at the time of the repeal will continue to exist").

The BSA says nothing about its substantive amendments (or new legal standards) applying to pending cases.  It says only that it "shall take effect" after approval and review.  BSA § 9003; Fiscal Year 2026 Budget Support Emergency Act of 2025 § 9003.  The D.C. Council knows how to apply a statute to pending cases when it wants to.  *See Public Media Lab, Inc. v. District of Columbia*, 276 A.3d 1, 9 (D.C. 2022) (statute "on its face applie[d] to 'any claims pending' "); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 167 (D.C. 2008) (statute provided that "qualified civil liability action[s] . . . pending on" the date of the statute's enactment "shall be immediately dismissed"); *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 396 (D.C. 1989) ("By its terms, the law applied retroactively to all cases pending as of July 1, 1986.").

The D.C. Council could have drafted the BSA to extinguish this lawsuit.  The Council was well aware of this litigation when it passed the BSA.  "If [it] wanted to apply the statute to this case, it could have, should have, and likely would have made that wish more apparent."  *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 175 (4th Cir. 2010).  It did not.

**II.    The BSA Cannot Apply Retroactively Because PASPA Remains Enforceable as to the District**

There is a deeper problem with the BSA:  it violates federal law.  PASPA makes it "unlawful" for any "governmental entity," expressly including the District, from "authoriz[ing]

2

by law or compact" a "betting, gambling, or wagering scheme" that is based on "competitive games in which amateur or professional athletes participate." 28 U.S.C. § 3702. Congress enacted PASPA to prevent problem gambling and to protect the integrity of amateur and professional athletics. Recent Department of Justice indictments for cheating linked to sports gambling underscores Congress's well-founded concern. *See*, *e.g.*, *United States v. Earnest*, No. 1:25-cr-00323 (E.D.N.Y. filed Jan. 11, 2025); *United States v. Clase de la Cruz*, No. 1:25-cr-00346 (E.D.N.Y. filed Nov. 5, 2025).

The BSA purports to exempt "sports wagering authorized by [the Sports Wagering Lottery Amendment Act of 2018 ("SWLAA")]" from the Statute of Anne's scope. BSA § 2062(c). But the SWLAA could not authorize anything prohibited by federal law. SWLAA says so explicitly: "Nothing in this subchapter shall be construed to authorize noncompliance with any provision of any federal law or regulation." D.C. Code § 36-621.17. PASPA prohibited the District from enacting SWLAA, and continues to prohibit the enactment of the BSA. The BSA therefore has no force or effect unless and until Congress repeals PASPA.

SWLAA expressly purports to legalize sports wagering. *See* D.C. Code § 36-621.01. Under PASPA, that is plainly unlawful. The BSA's attempt to carve out sports wagering from the Statute of Anne fares no better. The Supreme Court held in *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453, 465 (2018) that selectively removing a prohibition on sports gambling is itself a form of "authorization" prohibited by PASPA.

*Murphy* changes none of this. *Murphy* held that PASPA cannot constitutionally be enforced *against the States* because of the Tenth Amendment. *Id.* at 463. *Murphy* did not consider whether PASPA remains enforceable as to the District. *See also* Pet. for Writ of Certiorari, *New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, No.

16-477, 2016 WL 5940877, at *i (Sep. 29, 2016) ("Does a federal statute that prohibits adjustment or repeal of state-law prohibitions on private conduct impermissibly commandeer the regulatory power *of States*?") (emphasis added). Nor could *Murphy* conceivably have held that PASPA violates the Tenth Amendment as to the District. The District is not a State. Congress has plenary power to legislate over it, *see* U.S. Const. art. I, § 8, cl. 17; and the Tenth Amendment does not reserve any powers to it. Defendants (and the District) ask, in essence, that this Court find that *Murphy* conferred Tenth Amendment protections on the District. That is a remarkable – and entirely unsupportable – ask.

The District (and Defendants) attempt to achieve this constitutional power-grab through two flawed doctrinal gambits. Neither works. First, they claim that *Murphy* "struck down" PASPA, wiping it from the Statutes at Large. Dkt. No. 30-1 at 34; Dkt. No. 40 at 2 (calling PASPA a "dead letter"). But federal courts possess no such power. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018). What they can do is decline to enforce a law against a particular party in a particular case, and fashion appropriate relief for the parties. *See Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025); *see also id.* at 862 (Thomas J., concurring). *Murphy* did exactly that – it enjoined PASPA's enforcement as to New Jersey, and nothing more.

Second, Defendants invoke *Murphy*'s severability analysis. They claim *Murphy* "concluded that Congress would not have enacted PASPA *at all* if it could not have enacted the core provisions that the Court found unconstitutional" under the Tenth Amendment. Dkt No. 30-1 at 2. That, too, misses the mark. *Murphy*'s severability analysis asked whether PASPA's ancillary provisions – banning licensing and restricting advertising – could survive independently of the anti-authorization provision the Court enjoined. 584 U.S. at 474. But that

4

inquiry, fraught with speculation and hypotheticals about congressional intent, *see id.* at 488 (Thomas, J. concurring), does not provide the proper framework for determining whether PASPA remains effective as to the District. The Supreme Court set out the correct analysis in *Trump v. CASA*: the proper remedy for Congress's infringement on States' Tenth Amendment powers is simply to enjoin PASPA's enforcement as to the States – not to invalidate it everywhere. The District was not a party to *Murphy*. And the Tenth Amendment provides no protection to the District. The District is therefore entitled to no remedy from *Murphy*.

The Court's decisions regarding the Religious Freedom Restoration Act of 1993 ("RFRA") illustrate how this should work. In *City of Boerne v. Flores,* 521 U.S. 507, 536 (1997), the Court held that RFRA could not be enforced against the States because Congress had exceeded its Fourteenth Amendment § 5 authority. But the Court never suggested that *City of Boerne* erased RFRA from existence. To the contrary, the Court later confirmed that *City of Boerne* had not resolved whether RFRA could be enforced against the Federal Government and the federal territories. *See Cutter v. Wilkinson*, 544 U.S. 709, 715 n.2 (2005) ("RFRA, Courts of Appeals have held, remains operative as to the Federal Government and federal territories and possessions . . . . This Court, however, has not had occasion to rule on the matter."). And when it did consider the question, the Court held that it could – without conducting a severability analysis at all. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 n.1 (2006).

**III.   Conclusion**

The BSA does not apply to pending cases. And even if it could be read to do so, it is unenforceable in the face of PASPA and thus presents no bar to Plaintiff's claims in this case.

5

Dated: December 8, 2025                    Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho (D.C. Bar No. 488609)
Eliana Margo Pfeffer (D.C. Bar No. 1723571)
Mark P. Hirschboeck (D.C. Bar No. 1618827)
Kyle B. Grigel (D.C. Bar No. 90031164)
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
epfeffer@kellogghansen.com
mhirschboeck@kellogghansen.com
kgrigel@kellogghansen.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, I filed the foregoing Notice through the Court's CM/ECF system and that notice will be electronically sent to all registered participants identified on the Notice of Electronic Filing.

*/s/ Derek T. Ho*
Derek T. Ho
